UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LUIS GONZALEZ,

    Petitioner,

v.

STEVEN JOHNSON, et al.,

    Respondents.

Civ. No. 15-7564 (RBK)

**OPINION**

**ROBERT B. KUGLER, U.S.D.J.**

## I. INTRODUCTION

Petitioner, Luis Gonzalez, is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted in 2006 by a jury of first-degree carjacking. He is currently serving a forty-two-and-one-half years sentence with an eighty-five percent period of parole ineligibility pursuant to New Jersey's No Early Release Act ("NERA"). N.J. Stat. Ann. § 2C:43-7.2. Petitioner raises several claims in his habeas petition. For the reasons set forth below, the habeas petition will be denied.

## II. FACTS

On December 22, 2004, Petitioner was attending a program in Egg Harbor Township as a condition of his then-parole.[1] (*See* Dkt. No. 10-13 at 2.) Petitioner fled from the program, however, upon learning that a warrant had been issued for his arrest. (*See id.*)

Around the same time, Gregory Pieri arrived at a Wawa convenience store also located in the Egg Harbor Township area. (*See id.*) Mr. Pieri parked his vehicle to go inside the store and left his vehicle's engine running. (*See id.*) Upon returning to his vehicle, Mr. Pieri continued to

---

[1] Facts are taken from the Appellate Division's opinion affirming Petitioner's conviction for carjacking but remanding the case for resentencing. (Dkt. No. 10-13.)

leave the vehicle's engine running as he entered the backseat to wrap Christmas presents while he ate his lunch. (*See id.*) As Mr. Pieri was wrapping gifts, the front driver's side door of his vehicle opened suddenly, and Petitioner entered the driver's seat, putting the car into gear and driving away from the Wawa. (*See id.*) Mr. Pieri testified at trial that Petitioner instructed him to, "be quiet, not say anything and he wouldn't shoot me." (*Id.*) Mr. Pieri also testified that Petitioner then "motioned with his right hand down towards his pocket." (*Id.*) Mr. Pieri stated that as Petitioner drove the vehicle out of the Wawa parking lot, Mr. Pieri was in "shock or disbelief." (*Id.*)

Mr. Pieri soon removed his cell phone from his pocket and told Petitioner that he was going to dial 9-1-1. (*See id.* at 3.) Petitioner responded that if Mr. Pieri gave him the cell phone, Petitioner would let him out of the vehicle. (*See id.*) Mr. Pieri refused to hand over his phone. (*See id.*) Petitioner, however, still decided to pull over to the side of the road and permitted Mr. Pieri to exit. (*See id.*)

Once outside of the vehicle, Mr. Pieri dialed 9-1-1 and provided a description of Petitioner and the events that had occurred to the dispatcher. (*See id.*) Police subsequently located and pursued Mr. Pieri's stolen vehicle on the Atlantic City Expressway. (*See id.*) At trial, police officers testified that the stolen vehicle was traveling at a high rate of speed and was being driven erratically, swerving in and out of traffic lanes. (*See id.*) Out of concern for safety, the pursuit of the stolen vehicle was terminated by police. (*See id.*) Later that same day, however, the vehicle was located in Camden where it was being driven by Luis Torres. (*See id.*) Mr. Torres testified at trial that he had "rented" the vehicle from Petitioner for twenty dollars. (*See id.*) Petitioner was located the following day in Camden and arrested. (*See id.*)

2

Petitioner was charged and subsequently indicted on one count of carjacking, first degree, contrary to N.J. Stat. Ann. § 2C:15-2a(2). (*See id.*) On January 12, 2006, at a pre-trial conference before the Honorable Michael R. Connor, J.S.C., Petitioner signed a pre-trial memorandum indicating that he would decline the State's offer of sixteen years in prison subject to NERA in exchange for a guilty plea, and that Petitioner wanted to proceed to trial. (*See* Dkt. No. 10-1 at 2-5.) Over six months later, on September 11, 2006, a hearing was held before the Honorable James E. Isman, J.S.C., to update the court regarding a new plea offer that the State had extended to Petitioner. (*See* Dkt. No. 10-2 at 3). The State offered Petitioner ten years in prison subject to NERA in exchange for Petitioner's guilty plea to second degree robbery. (*See id.*) Petitioner provided a counteroffer to the State, offering to plead guilty to second degree robbery in exchange for a sentence recommendation of five years in prison subject to NERA. (*See id.*) In rejecting Petitioner's counteroffer, the State placed on the record that Petitioner's exposure at trial for first degree carjacking was ten to thirty years in prison, and that, if convicted, the State would be moving for an extended term. (*See id.* at 4-5.) The State contended that given the lengthy sentence Petitioner was facing, the State would not consider any sentence less than ten years. (*See id.* at 4.) The trial court then reiterated Petitioner's sentence exposure directly to Petitioner stating, "And Mr. Gonzalez, you would be facing up to a life sentence, obviously, if you are convicted, as an extended term." (*Id.* at 5.)

One month later, following a three-day jury trial, Petitioner was found guilty of the sole count of the indictment. (*See* Dkt. No. 10-13 at 3.) At his sentencing, the State moved for an extended term, which Judge Isman granted. (*See id.*) Petitioner was sentenced to forty-five years

in prison with a period of parole ineligibility of thirty-eight years and three months, pursuant to NERA.[2] (*See id.*)

### III. PROCEDURAL HISTORY

Following his conviction, Petitioner filed a notice of appeal with the New Jersey Superior Court, Appellate Division on June 20, 2007. On May 6, 2009, in an unpublished opinion, the Appellate Division affirmed Petitioner's conviction but remanded the matter back to the trial court for resentencing. (*See* Dkt. No. 10-13 at 16.) The Appellate Division held that resentencing was required because, "the trial judge misapprehended the proper sentencing range, unduly emphasized aggravating factor nine, and failed to consider the minimal severity of the crime." (*Id.* at 15.) Petitioner appealed the Appellate Division's decision to the New Jersey Supreme Court, but on July 20, 2009, the Supreme Court denied certification. (*See* Dkt. No. 10-14 at 1.)

On June 12, 2009, the Judge Isman presided over Petitioner's resentencing. (*See* Dkt. No. 10-8 at 1.) Judge Isman sentenced Petitioner to forty-two-and-one-half years in prison, with an eighty-five percent period of parole ineligibility, pursuant to NERA. (*See id.* at 22.) Petitioner again appealed his sentence, but on October 13, 2010, the Appellate Division affirmed the trial court's decision, holding that while the new sentence was "severe", it was not a mistaken exercise of the resentencing court's discretion. (*See* Dkt. No. 10-15 at 5.) Petitioner appealed to the New Jersey Supreme Court, but on July 22, 2011, his petition for certification was denied. (*See* Dkt. No. 10-16 at 1.)

On September 7, 2011, Petitioner submitted a verified petition for Post-Conviction Relief ("PCR"). (*See* Dkt. No. 10-17 at 1.) On July 26, 2013, a hearing on the petition was held before the Honorable Kyran Connor, J.S.C. (*See* Dkt. No. 10-9.) Following oral argument, Judge Connor

---

[2] N.J. Stat. Ann. § 3C:43-7.2 (a person convicted of a violent offense must serve at least 85% of his custodial term before becoming eligible for parole).

4

denied the petition, issuing a decision from the bench. (*See id.* at 42; Dkt. No. 10-23 at 1.) On November 13, 2013, Petitioner filed a notice of appeal to the Appellate Division from the denial of his PCR. (*See* Dkt. No. 10-24 at 1.) On April 30, 2015, the Appellate Division issued an opinion affirming the PCR court's decision for substantially the same reasons and denying Petitioner's appeal. (*See* Dkt. No. 10-26 at 3.) Petitioner subsequently filed a petition for certification to the New Jersey Supreme Court, but that petition was denied on July 20, 2015. (*See* Dkt. No. 10-27 at 1.)

In October 2015, Petitioner filed the instant habeas action. Respondent filed an answer in opposition, and Petitioner subsequently filed a reply brief in support.

## IV.    HABEAS CORPUS LEGAL STANDARD

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws or treaties of the United States. *See Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also Mason v. Myers*, 208 F.3d 414, 415 n.1 (3d Cir. 2000) (citing 28 U.S.C. § 2254). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104–132, 110 Stat. 1214 (Apr. 24, 1996), applies. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle set forth by the Supreme Court at the time the state court renders its decision." *Id.* (citations omitted). A federal habeas court making an unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *See Williams v. Taylor*, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue a writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "[Federal courts] may not characterize [] state-court factual determinations as unreasonable 'merely because [they] would have reached a different conclusion in the first instance.' [. . .] If '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's … determination.'" *Brumfeld v. Cain*, 135 S. Ct. 2269, 2277 (2015) (alterations in original) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

The AEDPA standard under § 2254(d) is a "difficult" test to meet and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The petitioner carries the burden of proof and with respect to review under § 2254(d)(1), that review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.*

In applying AEDPA's standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008). Furthermore, "[w]here there has been one reasoned state judgment

6

rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Dennis Sec'y Dep't of Corr.*, 834 F.3d 263, 353 n.10 (3d Cir. 2016) (Jordan, J., concurring in part and concurring in the judgment) (noting that while *Ylst* predates the passage of AEDPA, the *Ylst* presumption that any subsequent unexplained orders upholding the judgment will be presumed to rest upon the same ground is still valid). Additionally, AEDPA deference is not excused when state courts issue summary rulings on claims as "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011) (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

## V. DISCUSSION

### A. Lesser-Included Offense

In Petitioner's Ground One, he argues that the trial court's omission of the lesser-included offense of theft from the jury instruction was clearly capable of producing an unjust result. This claim appears to rest on matters of state law. An allegedly incorrect jury instruction under state law is not a basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (alteration in original). However, to the extent that Petitioner's argument could be construed as a federal claim, a habeas court must consider, "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process [. . .] not merely whether the 'instruction is undesirable, erroneous, or even universally condemned.'" *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (internal quotation marks omitted) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973)). A state trial court's refusal to give a requested jury instruction does not, by itself,

create a federal habeas claim. Rather, a petitioner must demonstrate that the instructional error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Further, that error must have resulted in "actual prejudice." *Id.* at 637 (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).

Significantly, the Supreme Court has never recognized that the Due Process Clause mandates lesser-included offense instructions in non-capital cases. *See Gilmore v. Taylor*, 508 U.S. 333, 342 (1993) ("Outside of the capital context, we have never said that the possibility of a jury misapplying state law gives rise to federal constitutional error. To the contrary, we have held that instructions that contain errors of state law may not form the basis for federal habeas relief.") Even in capital cases where the Supreme Court has ruled that the jury must be instructed on lesser-included offenses, those instructions are only required when warranted by the evidence. *See Beck v. Alabama*, 447 U.S. 625, 627 (1980).

Here, the facts demonstrate that a lesser-included offense of theft was not warranted by the evidence, and that the trial court's failure to instruct on theft did not have a substantial and injurious effect or influence in determining the jury's verdict. At trial, the victim testified that after Petitioner had entered the victim's vehicle and had begun driving away from the Wawa parking lot, Petitioner told the victim that if he was quiet and didn't say anything, Petitioner would not shoot him. (*See* Dkt. No. 10-4 at 61.) Petitioner then gestured towards his pocket. (*See id.* at 62.) The victim testified that during the incident, he felt "panicked," "frightened," "upset," and "scared." (*Id.* at 122; 133-34.)

At no point during the trial did Petitioner dispute what occurred inside the vehicle. The defense theory was one of mistaken identity, that the Petitioner was not the individual who had

8

committed the crime. The victim's testimony about what occurred inside the vehicle was, therefore, never disputed. However, towards the end of the trial and again on direct appeal, Petitioner argued that there was insufficient proof of all of the elements of carjacking to convict him. Specifically, Petitioner asserted there was not adequate proof that the victim was put in fear of immediate bodily injury, an element required by the governing statute. *See generally* N.J. Stat. Ann. § 2C:15-2a(2). Although the victim testified that Petitioner threatened to shoot him, Petitioner argued that he had never brandished a weapon, and that the victim's testimony did not establish that he was ever in fear of bodily injury. Petitioner pointed to the victim's "gumption" in refusing to hand over his cell phone and in threatening to call 9-1-1 on Petitioner. (*See* Dkt. No. 10-11 at 17.) Yet, as the Appellate Division aptly phrased it when the issue was raised on direct appeal:

> Although there was a dispute as to whether it was defendant that jumped in Pieri's vehicle and drove off with him inside, there was no dispute that the person who stole the vehicle did so with Pieri inside and made statements and gestures sufficient to put Pieri in fear of immediate bodily injury. We conclude that no rational jury coming to the conclusion that defendant was the person who took Pieri's vehicle could find him guilty of a lesser-included offense.

*State v. Gonzalez,* Indictment No. 05-01-0184, 2009 WL 1211821, at *5 (N.J. Super. Ct. App. Div. May 6, 2009).

The record reveals that Petitioner, in the course of stealing the victim's vehicle, threatened to shoot the victim if he was not quiet. Consequently, there was no rational basis for the jury to convict on mere theft. The trial court's failure to instruct the jury on the lesser-included offense of theft was not warranted by the evidence, and thus, the lack of instruction did not have a substantial and injurious effect or influence in determining the jury's verdict. *See Brecht*, 507 U.S. at 631.

9

**B. Sentencing**

In Grounds Two and Three, Petitioner argues that both his initial sentence and his resentence violated his federal rights. Regarding Ground Two, Petitioner argues that his initial sentence of forty-five years in prison subject to NERA was excessive and in violation of his Eighth Amendment right against cruel and unusual punishment. In Petitioner's Ground Three, he argues that his resentence of forty-two and one-half years subject to NERA was a violation of his Fifth Amendment Due Process right. This Court will address each claim in turn.

    i.    *Excessive Sentence*

A sentence that lays outside the statutory limits may be set aside in habeas proceedings. *See Bozza v. United States*, 330 U.S. 160, 166 (1947); *see also United States v. Miknevich*, 638 F.3d 178, 186 (3d Cir. 2011) (holding that a sentence that is *within* the limits imposed by statute "is neither excessive nor cruel and unusual under the Eighth Amendment"). Here, Petitioner was sentenced well within the statutorily prescribed limits. New Jersey law provides that the ordinary term of imprisonment for carjacking, a first-degree crime, is between ten and thirty years. N.J. Stat. Ann. § 2C:15-2b. New Jersey law also mandates that carjacking is subject to NERA, which provides that a defendant must serve eighty-five percent of his sentence before he is eligible for parole. *See* N.J. Stat. Ann. § 2C:43-7.2. Accordingly, after Petitioner was found guilty by a jury, he would have been subject to between ten and thirty years in prison with an eighty-five percent period of parole ineligibility. However, after the trial concluded, the State moved for Petitioner to be classified as a persistent offender and given an extended term pursuant to New Jersey Statute § 2C:44-3. This statute provides, in pertinent part:

> The court may, upon application of the prosecuting attorney, sentence a person who has been convicted of a crime of the first, second or third degree to an extended term of imprisonment if it

> finds one or more of the grounds specified in subsection a., b., c., or f. of this section. [. . .]
> a. The defendant has been convicted of a crime of the first, second or third degree and is a persistent offender. A persistent offender is a person who at the time of the commission of the crime is 21 years of age or over, who has been previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least 18 years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within 10 years of the date of the crime for which the defendant is being sentenced

N.J. Stat. Ann. § 2C:44-3.

If a defendant is found to be subject to an extended term on a first-degree crime, the New Jersey sentencing guidelines provide that the defendant may face up to life in prison. N.J. Stat. Ann. § 2C:43-7a(2). Here, the State's motion for an extended term in Petitioner's case was granted and Petitioner, therefore, faced a maximum sentence of life in prison. Thus, even Petitioner's initial sentence of forty-five years was within the appropriate statutory limits.

To the extent that Petitioner is attempting to argue that an extended term sentence violates his Eighth Amendment rights, courts have consistently rejected that argument. The United States Supreme Court has previously held that, "the Eighth Amendment contains a 'narrow proportionality principle,' that 'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are 'grossly disproportionate' to the crime.'" *Graham v. Florida,* 560 U.S. 48, 59-60 (2010) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 997, 1000-01 (1991)). In past cases, the Supreme Court has upheld sentences of life in prison for a defendant's third nonviolent felony pursuant to Texas' recidivist statute, *Rummel v. Estelle,* 445 U.S. 263 (1980), twenty-five years to life in prison for theft of golf clubs under California's Three Strikes sentencing scheme, *Ewing v. California,* 538 U.S. 11 (2003), and two consecutive terms of twenty-five years to life in prison for two convictions for petty theft, also pursuant to

California's Three Strikes law, *Lockyer v. Andrade,* 538 U.S. 63 (2003). In *Lockyer,* the Supreme Court held that, "[t]he gross proportionality principle reserves a constitutional violation only for the extraordinary case." *Lockyer*, 538 U.S. at 77.

Further, Petitioner's sentence is consistent with sentences received by others convicted of the same crime. *See State v. Rawlins*, No. 99-10-1868-1, 2007 WL 461019, at *4 (N.J. Super. Ct. App. Div. 2007) (upholding constitutionality of defendant's extended term sentence of fifty years for first-degree carjacking); *see also State v. Luibil*, Indictment No. 03-04-0383, 2005 WL 3030823, at *4 (N.J. Super. Ct. App. Div. 2005) (holding that extended term sentence of thirty-four years on first degree carjacking conviction was not manifestly excessive).

Here, the imposition of the extended term as a persistent offender was not contrary to, or an unreasonable application of, clearly established Eighth Amendment jurisprudence as determined by the Supreme Court. *See Lockyear*, 538 U.S. at 77. Accordingly, Petitioner is not entitled to relief on this claim.

    ii.    *Due Process*

Petitioner also asserts that his resentence violated his Due Process rights under the Fifth Amendment, and that the resentence was a mistaken exercise of discretion. It is apparent from the record that Petitioner had a resentencing hearing where both the State and defense counsel presented oral argument regarding the appropriate length of Petitioner's term of incarceration. It is also evident that the sentencing court weighed all of the aggravating factors, taking into consideration the Appellate Division's opinion and guidance on remand, and that the sentencing court found no mitigating factors. The court expressly found that Petitioner was subject to an enhanced sentence on a first-degree carjacking conviction as a persistent offender and was subject to between ten years and life imprisonment. The court resentenced Petitioner to what the court

determined was the "intermediate" sentence between ten years and life in prison, forty-two and one-half years. (*See* Dkt. No. 10-8 at 21-22.) Petitioner appealed his resentence and the Appellate Division affirmed the trial court's decision as having been appropriately within the exercise of the court's discretion. (*See* Dkt. No. 10-15 at 5.) Petitioner appealed to the Supreme Court, but that Court denied certification. Accordingly, Petitioner was accorded all process that was due under the law, and his sentence was not an abuse of discretion as it was within the statutorily prescribed limits. Given the foregoing, this Court finds that Petitioner was appropriately sentenced and that there was no denial of due process in his sentencing.

Finally, to the extent that Petitioner argues that the resentencing court abused his discretion by failing to properly consider the mitigating factors, this claim must be dismissed because it does not raise a federal constitutional question. *See Gentile v. Warren,* Civil No. 11–6125, 2013 W L 85266, at *15 (D.N.J. Jan.7, 2013) (finding habeas claim that alleges that state court failed to properly consider mitigating factors at sentencing is not cognizable as a federal habeas claim as it relates only to alleged violation of state law). Accordingly, Petitioner's sentencing challenges fail and he is not entitled to habeas relief on those grounds.

## C. Ineffective Assistance of Counsel

In Petitioner's remaining claims, Grounds Four through Eight, he raises several ineffective assistance of counsel arguments against his trial counsel. Petitioner asserts that trial counsel misadvised him as to his sentencing exposure, failed to adequately consult with him prior to trial, failed to adequately investigate his mental health and a possible diminished capacity defense, and failed to argue mental health as a mitigating factor at sentencing.

The Sixth Amendment guarantees the right to effective assistance of counsel. U.S. Cont. amend. VI. To prevail on a claim of ineffective assistance of counsel, a party must establish that:

1) counsel's performance was deficient; and 2) the petitioner was prejudiced by counsel's deficiency. *See Strickland v. Washington,* 466 U.S. 668, 687 (1984). The first *Strickland* prong is an objective standard which requires the petitioner to show that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. In evaluating whether counsel was deficient, "the proper standard for attorney performance is that of reasonably effective assistance." *Id.* The Constitution requires a fair trial, not some higher quality of legal representation. *See id.* at 688-89. Thus, the standard is highly deferential, and counsel is "strongly presumed to have rendered adequate assistance" and to have used "reasonable professional judgment." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016). Therefore, for a petitioner to satisfy the first prong of the *Strickland* test, they must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

The second prong of the *Strickland* test requires that a petitioner demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The petitioner bears the burden of demonstrating how he was prejudiced. Thus, where a petition contains "no factual matter [. . .] and only provides unadorned legal conclusion[s] . . . without supporting factual allegations, that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief." *Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015) (internal quotations and citations omitted).

i.  *Sentence Exposure*

Petitioner first asserts that trial counsel was ineffective because trial counsel did not sufficiently explain to Petitioner what his sentence exposure would be if he were to be convicted at trial. Specifically, Petitioner argues that he was unaware that he could face an extended term sentence and that the extended term sentence could be as long as life in prison. Petitioner contends that trial counsel informed him that he was only facing ten to thirty years, and that trial counsel advised since Petitioner had not used a weapon during the commission of the crime, that Petitioner would not receive a sentence greater than twenty years.

These issues were each addressed in the context of the PCR proceedings. The PCR court held, and New Jersey's Appellate Division affirmed for substantially the same reasons, that the Petitioner was advised of his sentencing exposure upon conviction as his exposure was addressed on the record with him at a pre-trial conference. The PCR court specifically mentioned the following pertinent portions of Petitioner's September 11, 2006 pre-trial conference, held one month prior to the start of trial:

> **DEFENSE COUNSEL**: Judge, the offer that we received today was to second degree robbery, not to a first degree sentenced as a second degree, but to a second degree robbery to a ten year 85 degree -- 85% sentence, but it's a not to exceed sentence, Judge, so we would be permitted to go ahead and argue for less.
> **THE COURT**: Argue for less.
> **DEFENSE COUNSEL**: Judge, Mr. Gonzalez gave me authority today to make a counteroffer to that of five at 85 with the bottom of the second degree range, and this is where we are.
> [. . .]
> **PROSECUTOR**: That being said, the State will move for an extended term on a first degree conviction, granted if we get it, but if we get it, I, I sincerely don't see any likelihood that the State -- that the Court won't grant the State's motion for extended term. That's realistically what he's facing, so there is no chance that I will consider a five at 85%, there's no chance that I will consider anything but ten at 85%. This comes from the First Assistant.
> [. . .]

> **THE COURT**: And Mr. Gonzalez, <u>you would be facing up to a life sentence, obviously, if you are convicted, as an extended term</u>, so that's why I suggested that your counteroffer is probably not going to be accepted and unreasonable.

Dkt. No. 10-2 at 3-5 (emphasis added).

Here, although Petitioner contends that he was misadvised by trial counsel as to his sentence exposure, the trial court explicitly informed Petitioner at a pre-trial conference that he could be facing up to life in prison. The trial court addressed Petitioner directly at the pre-trial conference, stating, "Mr. Gonzalez, you would be facing up to a life sentence, obviously, if you are convicted, as an extended term." (Dkt. No. 10-2 at 5.) Further, although Petitioner claims he was unaware that he could be sentenced to an extended term, he signed a pretrial memorandum on January 12, 2016 which indicated that he was extended term eligible. (*See* Dkt. No. 10-21 at 39.) However, even if trial counsel had not himself informed Petitioner that his maximum exposure could be up to life in prison, Petitioner did not suffer any prejudice because he was directly informed of this fact on the record by the trial court at least one month prior to the start of trial.

As discussed above, AEDPA provides that a habeas petition "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim [. . .] resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court factual determination is not unreasonable in light of the evidence presented in the state court under § 2254(d)(2) where "reasonable minds reviewing the record might disagree" on the factual finding. *Rice v. Collins*, 546, U.S. 333, 341-42 (2006). Here, in light of the evidence presented, the PCR court's decision, and Appellate Division's affirmance of that decision, was not unreasonable. A reasonable mind reviewing the record could easily come to the conclusion that Petitioner failed to clearly demonstrate either that trial counsel made any

misrepresentations or that he was prejudiced by any such misrepresentation. Therefore, Petitioner's first ineffective assistance of counsel claim is without merit.[3]

    ii.    *Mental Health Conditions*

Petitioner also argues that trial counsel was ineffective for failing to investigate his mental health conditions. Petitioner asserts that if trial counsel had investigated his mental health, that Petitioner could have raised an insanity or diminished capacity defense at trial, or that he could have argued mental defect as a mitigating factor at Petitioner's sentencing.

When Petitioner initially raised this claim in his PCR, he submitted a copy of a psychiatric evaluation he had received two months before the carjacking occurred. (*See* Dkt. No. 10-22 at 31-34.) Petitioner also requested that a doctor be permitted to evaluate him in prison in furtherance of his PCR claim. (*See* Dkt. No. 10-21 at 40.) The PCR court granted this request and ordered a Dr. Bogacki be permitted to enter the prison and evaluate Petitioner's mental health. (*See* Dkt. No. 10-21 at 41-42.) However, Petitioner never submitted an evaluation from Dr. Bogacki to the court. The PCR court noted this during her decision on the record stating, "It's also of significance that no report from a mental health professional has been provided with this petition. [. . .] There's no report from Dr. Bogacki, even though we know Dr. Bogacki was retained and that the Court signed an order to get him into the prison to evaluate Mr. Gonzalez." (Dkt. No. 10-9 at 37-38.) The court also stated that in the sixteen years prior to the carjacking, Petitioner had been convicted on five separate occasions for indictable offenses and yet, Petitioner's alleged lifelong mental health issues never arose. (*See id.* at 37.) In Petitioner's presentence report for his carjacking conviction, he did mention having been diagnosed with depression a year prior and having been

---

[3] In Ground Five of his habeas petition, Petitioner argues that he is entitled to an evidentiary hearing based upon trial counsel's alleged failure to advise Petitioner of his sentencing exposure, as argued in Ground Four. Having found Petitioner's argument in Ground Four to be without merit, this Court need not address Petitioner's argument in Ground Five.

prescribed medications for his condition at the county jail. However, the PCR court ultimately concluded that nothing in the record suggested that trial counsel had any knowledge of Petitioner's mental health issues and there was nothing in the nature of the crime itself which would have invited consideration of an insanity or diminished capacity offense. (*See id.* at 38.) Accordingly, the PCR court denied Petitioner's claim and the Appellate Division affirmed substantially for the reasons set forth by the trial court.

In order to successfully assert an ineffective assistance of counsel claim, a petitioner must meet the *Strickland* two-prong test. In New Jersey specifically, "when a petitioner claims his trial attorney inadequately investigated his case, he must assert the facts that investigation would have revealed supported by affidavits or certification based upon personal knowledge of the affiant or the person making a certification." *State v. Cummings*, 728 A.2d 307, 315 (N.J. Super. Ct. App. Div. 1999). This Court, in reviewing state court decisions, cannot grant a petitioner relief unless the state court decision was based on factual findings that were "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Here, Petitioner did not provide any affidavits or certifications to demonstrate what facts trial counsel would have discovered if he had investigated Petitioner's mental health. Nor did Petitioner establish that trial counsel would have discovered that Petitioner did, in fact, have a mental health issue at the time of the carjacking that would have warranted an insanity or diminished capacity defense, or that the existence of a mental health issue would have changed the result of the proceeding. The pivotal question before this Court is whether the application of the *Strickland* standard was unreasonable. This Court cannot say, in light of the record, that the PCR court's decision was at all unreasonable.

### iii. Failure to Visit Petitioner in Jail

Finally, Petitioner argues that trial counsel was ineffective because he never visited Petitioner while he was in pre-trial custody. Petitioner argues that as a result of trial counsel's failure to visit him in prison, that trial counsel failed to discover and investigate his mental health issues.

Petitioner first raised this claim during his PCR proceedings. At Petitioner's PCR hearing, he introduced a seven-line report authored by defense investigator, Katie Mitchell. (*See* Dkt. No. 10-20 at 13.) Ms. Mitchell wrote that she spoke with a jail official whose records indicated that there were no attorney visits with Petitioner during the time frame of November 2005 until December 15, 2006. (*See id*.) Significantly, no documentation was provided to substantiate Ms. Mitchell's report, leading the PCR court to determine that the report was "third-hand hearsay" that did not establish that trial counsel never visited the jail. (*See* Dkt. No. 10-9 at 36.) Accordingly, the PCR court held, and the Appellate Division affirmed for substantially the same reasons, that Petitioner had demonstrated nothing more than a bald assertion and that he had not presented a prima facie case of ineffective assistance of counsel claim. (*See id.*)

At the outset, this Court notes that there is no constitutionally required minimum number of visits that defense counsel must arrange with a defendant in order to provide effective assistance. Most significantly, however, Petitioner has failed to show how trial counsel's purported lack of personal visits to the jail would have changed the outcome of his trial. *See Strickland,* 466 U.S. at 694. Petitioner baldly asserts that more consultations with his attorney would have led to trial counsel's investigation of Petitioner's mental health issues. But, as discussed above, Petitioner has failed to demonstrate what trial counsel would have discovered if he had investigated Petitioner's mental health, or how a mental health issue would have changed the outcome of the

proceedings. Since Petitioner bears the burden of showing how counsel was deficient and how that deficiency resulted in actual prejudice, and Petitioner has plainly failed to do so, this claim must be rejected. In light of the foregoing, the state court's application of *Strickland* was therefore not unreasonable.

## VI. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not disagree with this Court's conclusion that Petitioner fails to make a substantial showing of the denial of a constitutional right, Petitioner's habeas petition is inadequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

## VII. CONCLUSION

For the reasons stated above, the Petition for habeas relief is DENIED and a certificate of appealability shall not be issued.

DATED: December 7, 2018              s/Robert B. Kugler_
                                                   ROBERT B. KUGLER
                                                   United States District Judge